GEM MOTOR CO. v. SECURITIES INV. CO.

Middle Section. August 5, 1933.

Petition for Certiorari denied by Supreme Court, December 15, 1933.

John H. Lechleiter and Oliver M. Grace, both of Nashville, for plaintiff in error.

Jacobs H. Doyle, of Nashville, for defendant in error.

FAW, P. J.   This is an action of replevin for the possession of an automobile, brought before a justice of the peace of Davidson county and taken by appeal from his judgment to the circuit court of Davidson county, where it was transferred to the Third circuit court and there tried before the judge without a jury, and judgment was rendered in favor of the plaintiff and against the defendant, from which judgment the defendant W. D. Martin, doing business under the trade-name of Gem Motor Company, appealed in error to this court, and is here insisting, through a single assignment of error, that there is no material evidence to support the judgment of the trial court.

For convenience, we will designate the parties as plaintiff and defendant as they appeared on the record below.

On September 18, 1931, the Imperial Motor Car Company sold and delivered a used "Ford Coupé, Motor No. A3991470," to one Thos. Ewing, Jr., at Nashville, Tennessee, for $450, and took in part payment the purchaser's note for $362.40, payable in installments of $30.20 each month for twelve successive months after its date, with interest after maturity at six per cent.   The title to the car and extra equipment was retained by the seller until the full payment of the purchase price.   There was no registration of the instrument evidencing the retention of title by the seller.

On the same day (September 18, 1931), said note and a "conditional sales agreement" attached thereto were duly assigned, transferred and delivered by the Imperial Motor Car Company to the plaintiff, Securities Investment Company.

Thos. Ewing, Jr., the purchaser, died on October 1, 1931, and his widow, Louise Ewing, soon thereafter qualified as the administratrix of his estate, and on October 19, 1931, paid the first installment due on said note by her check as administratrix for $30.20 payable to, and delivered to, the plaintiff, Securities Investment Company.   No further payments have been made on the purchase price of the car.

On or about November 1, 1931, Louise Ewing took the car in question to the "garage," or repair shop, of defendant, in a "badly damaged" condition, and contracted with defendant to repair same —representing to defendant that she was the owner of the car and that she wanted him to repair it. Defendant thereupon made repairs on the car to the value of $127.50, and at the trial below plaintiff, through his attorney, admitted that the defendant's "account is a reasonable charge for such repairs."

Defendant's charge for repairs being unpaid, the automobile remained in possession of the defendant until January 2, 1932, when it was taken from the defendant's possession and delivered to plaintiff by the execution of the replevin warrant in this case.

The defendant sued out an attachment for the car in question on the same day (January 2, 1932), and placed it in the hands of a deputy sheriff of Davidson county, but there was no levy of the attachment nor service of process on Louise Ewing, the defendant named in said attachment suit, and two days later (on Monday, January 4, 1932) the plaintiff in that suit (the defendant herein) voluntarily withdrew and dismissed said attachment suit, and defended the replevin suit now before us on the ground that he was and is entitled to the possession of said automobile by virtue of the artisan's common-law lien, and that his said lien for repairs was and is a prior charge on the automobile, and superior to the retained title of the plaintiff.

The plaintiff, by way of replication to defendant's plea of the artisan's common-law lien, insisted (1) that the defendant had no contract with the conditional vendee, and did not charge the repairs to the conditional vendee or his estate; (2) that the plaintiff is not indebted to the defendant; and (3) that the defendant elected to pursue his statutory lien as the remedy to collect his repair claim against said property, thereby waiving his common-law lien upon said property, and the conditional sales contract is superior to that of the defendant's statutory lien.

As a matter of course, defendant had no contract with the original "conditional vendee," as the latter had been dead for a month when the car was brought to defendant's shop and the contract for repairs was made; but defendant had a contract with the administratrix of the estate of the original "conditional vendee," in whom the title of her intestate vested at the date of her qualification as administratrix, which title, when thus vested, related back to the time of the death of her intestate. Sizer's Pritchard on Wills and Administration, section 644, and cases there cited.

Louise Ewing represented to defendant that she was the owner of the automobile; and she was in fact and in law, at that time, the owner of whatever interest and estate her intestate, Thos. Ewing, Jr., acquired therein by his purchase from the Imperial Motor Car

Company. She stood in the shoes of the "conditional vendee" as completely as the plaintiff stood in the shoes of the conditional vendor.

Defendant had no knowledge or notice, either actual or constructive, of the retained title in the plaintiff, and did not know or have information that the plaintiff or any one other than Louise Ewing had any claim upon the automobile.

It should also be stated that the plaintiff had no knowledge or information that the car in question had been "wrecked" or damaged and /or had been repaired by defendant until after the repairs were made and default had been made in the payment of the installment on the purchase note due November 18, 1931, and had then instituted a search for the car in order to enforce its conditional sale contract.

It is now settled law in this state that the common-law lien of an artisan for repairs upon a damaged automobile, made at the request of the conditional vendee, is, so long as the artisan retains possession, superior to the unrecorded retention of title by a conditional vendor, where the artisan was, at the time the work was done, without knowledge or notice, either actual or constructive, of the vendor's retained title. Robinson Bros. Motor Co. v. Knight, 154 Tenn., 631, 288 S. W., 725; Diamond Service Station v. Broadway Motor Co., 158 Tenn., 258, 263, 12 S. W. (2d), 705; Knoxville Outfitting Co. v. Knoxville Fireproof Storage Co., 160 Tenn., 203, 206, 22 S. W. (2d), 354.

But, as before stated, it is insisted for plaintiff that defendant elected to pursue his statutory lien (chapter 150, Acts of 1909, Code of 1932, secs. 7960, 7961) as the remedy to collect his said claim for repairs, and that he thereby waived his common-law lien.

The common-law lien (as its name implies) was not created by statute, but it is distinctly recognized, and the method provided for its enforcement, by statute. Shannon's Code, sections 3559-3563, Code of 1932, sections 7984-7988; Robinson Bros. Motor Co. v. Knight, supra, 154 Tenn., 634, 288 S. W., 725.

The "statutory lien" upon any vehicle, in favor of a mechanic, etc., for any repairs or improvements made or fixtures or machinery furnished, at the request of the owner or his agent, had its origin in the Act of 1909, chapter 150, and was carried into the Code of 1932 as sections 7960, 7961. This latter lien does not depend upon the retention of possession by the artisan or mechanic making the repairs, and it is inferior or subordinate to the lien or title of the conditional seller. Shaw v. Webb, 131 Tenn., 173, 174 S. W., 273, L. R. A., 1915D, 1141, Ann. Cas., 1916A, 626.

Plaintiff seeks to invoke the doctrine of election of remedies—basing this contention upon the fact that defendant sued out a writ of attachment for the automobile in question on January 2, 1932, which remedy was an appropriate method for the enforcement of his "statutory lien" and not an appropriate method for the enforcement of his "common law lien."

It is well settled that, where a party has the right to pursue one of two inconsistent remedies, and he makes his election and prosecutes his suit accordingly to final judgment, he cannot thereafter pursue another and inconsistent remedy.

And we may also concede, for the purposes of this case, that one who elects to pursue one of two inconsistent remedies, and prosecutes suit accordingly, to the detriment of his adversary, is bound thereby, and he cannot subsequently abandon the one first chosen and pursue the other.

Two modes of redress are inconsistent when the assertion of one involves the negation or repudiation of the other. Phillips v. Rooker, 134 Tenn., 457, 466, 184 S. W., 12.

"Not every election of remedies is irrevocable, because two or more remedies are often given to redress the same wrong, and are therefore concurrent." Grizzard v. Fite, 137 Tenn., 103, 191 S. W., 969, 970, L. R. A., 1917D, 652.

The artisan's "common law lien" and his "statutory lien" for repairs on an automobile are designed for the same purpose, and, aside from the method of enforcement, the sole difference is that the former depends for its continuance upon the possession of the property by the artisan, and the latter does not.

The attachment writ sued out by the defendant was withdrawn and dismissed by him before its execution, and defendant did not part with the possession of the automobile in controversy until it was taken from him by the execution of the writ of replevin in the instant case. The plaintiff's rights were not prejudiced or jeopardized in any way by the issuance of the attachment, and he cannot complain of its withdrawal before any action was taken thereunder.

The mere institution and withdrawal of the attachment suit, in the manner disclosed in this record, without disturbing the status of the automobile or injuring the plaintiff, did not constitute a binding election nor estop the defendant from thereafter relying upon his common-law lien. See 9 R. C. L., pp. 968, 969, 970, sec. 15, and note in 34 L. R. A. (N. S.), 309 et seq.

For the reasons stated, the defendant's assignment of error is sustained. The usual practice on appeal from a judgment at law in a case tried by a judge without a jury (as this case was tried) is for this court to render such final judgment as the trial court should have rendered. Hurley & Son v. Buchi, 10 Lea, 346, 350.

In our view of the instant case, the trial court should have ordered and adjudged that the automobile replevined by the plaintiff be returned to the defendant, or, on the failure of the plaintiff to return the automobile to the defendant, that the defendant recover of the plaintiff and the surety on its replevin bond the value of said automobile, with interest thereon, and damages for the detention of the same; and such would be our judgment if the record contained proof

of the value of the automobile at the time it was replevined in this case.

But there is an absence of evidence in the record from which we can find the value of the automobile, and the case must therefore be remanded to the circuit court. Keelin v. Graves, 129 Tenn., 103, 115, 165 S. W., 232, L. R. A., 1915A, 421; Frazier v. Nashville Gas & Heating Co., 164 Tenn., 8, 11, 46 S. W. (2d), 62.

It results that the judgment of the circuit court is reversed and set aside, and the cause will be remanded to the circuit court for a new trial in conformity with this opinion.

The costs of the appeal will be adjudged against the plaintiff, Securities Investment Company. The costs of the trial court will await the future judgment of that court.

Crownover and DeWitt, JJ., concur.