CITY FINANCE CO. *v.* PERRY.

*(Nashville,* December Term, 1952.)

Opinion filed March 6, 1953.

HARRY P. RUBERT and JESS D. EWING, both of Memphis, for plaintiff in error.

JOHN C. ROBERTSON and HARDISON, WALTON & COLLINS, all of Memphis, for defendant in error.

MR. JUSTICE TOMLINSON delivered the opinion· of the Court.

On November 23, 1951 Theo O. Fisher executed a chattel mortgage to plaintiff-in-error, City Finance Company, on a 1941 model passenger automobile to secure the payment of a loan that day made Fisher in the amount of

$120. On November 27, 1951 City Finance Company's chattel mortgage lien was duly recorded in the Motor Vehicle Division, Tennessee Department of Safety, in Nashville, on the title certificate issued in the name of Fisher on said automobile, as provided by the Tennessee Motor Vehicle Title and Registration Law of 1951, being Chapter 70, Public Acts of 1951. There is no evidence that this chattel mortgage was recorded in the Register's Office at Memphis.

Thereafter, December 20, 1951, Fisher took this automobile to the garage of Perry and caused repairs to be made thereon to the amount of $120. Perry had no actual notice of the prior chattel mortgage to City Finance Company. Fisher did not pay the account for these repairs. Perry retained possession of the automobile so as to preserve his common law lien.

Fisher defaulted in payment of his chattel mortgage loan to City Finance Company. Therefore, on January 24, 1951 City Finance Company instituted a replevin suit against Fisher and Perry. Fisher did not resist. Perry did, on the ground that his common law lien was superior to the chattel mortgage lien of City Finance Company.

The Circuit Court adjudged the subsequent common law lien of Perry superior to the prior chattel mortgage lien of City Finance Company. The reason is not stated. City Finance Company has appealed to this Court, the above stated facts being stipulated.

The aforementioned Motor Vehicle Title and Registration Law of 1951 requires all owners of motor vehicles using the highways to register the same in the name of the owner with the Motor Vehicle Division of the Tennessee Department of Safety and to procure from it a certificate of title and a title card. This certificate is de-

livered to the owner if there be no lien or encumbrance appearing thereon. Otherwise, it is delivered to the person holding such lien shown in the certificate, and is held by such person until the lien be discharged. A notation of the discharge is then made upon the certificate, and it is delivered to the owner of the vehicle. Section 35(d) of the statute. The City Finance Company had complied with all these requirements of this statute before Perry made the repairs for which he insists that his lien is superior to the chattel mortgage lien of City Finance Company.

Section 77 of the statute provides that no person shall operate a motor vehicle upon the highways unless some occupant of the vehicle has in possession the certificate of title and title card ''except as otherwise expressly permitted in this Act''. This exception exists when there is a chattel mortgage lien upon the automobile. For, in that event, the certificate of title must be in the possession of the holder of the chattel mortgage, as heretofore noted.

Perry was charged with knowledge of this law. In the exercise of ordinary care he should have requested Fisher to exhibit his certificate of title which the law required to be in Fisher's possession unless it was being held by a lien holder. Fisher, of course, could not have presented the certificate, because it was lawfully in the possession of City Finance Company, the holder of the chattel mortgage. Therefore, upon Fisher's failure to exhibit this certificate, Perry would have been put on inquiry. Inquiry would have revealed the chattel mortgage of City Finance Company. ''* * * 'whatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and in good faith.' '' *Texas*

*Co.* v. *Aycock,* 190 Tenn. 16, 28, 227 S. W. (2d) 41, 46, 17 A. L. R. (2d) 322.

It is, however, the insistence of Perry that by reason of the provisions of Section 69(a) of the statute the recording of the lien on the title certificate is not constructive notice to one acquiring a subsequent common law lien. Section 69(a), in so far as pertinent to this insistence, is as follows:

"such filing and the notation of the lien or encumbrance upon the certificate of title as provided in this Act shall constitute constructive notice of all liens and encumbrances against the vehicle described therein to creditors of the owner, to subsequent purchasers and encumbrances except such liens as may be authorized by law dependent upon possession."

The contention made for Perry is "that this section of the Law means that proper recording of a lien or encumbrance under the provisions of the Law shall be constructive notice to all persons except those who hold liens authorized by law dependent upon possession".

If Perry's construction of Section 69(a) be correct, then Chapter 70 of the Public Acts of 1951 has made it impossible for the holder of a chattel mortgage or deed of trust on a motor vehicle to protect his lien against subsequent common law liens of artisans, in so far as it applies to motor vehicles, assuming the artisan did not have actual notice. This is true because Section 69(b) of Chapter 70 provides that the notation of the lien on the certificate of title shall be the "exclusive" method of giving constructive notice of such lien, "except as to liens dependent upon possession". Of course, the possession of the motor vehicle by the artisan would be constructive notice to one subsequently taking a chattel mortgage so long as the vehicle was being so held by the artisan.

Section 69(b) further provides that the statutes relating to the registration in the Register's Office of chattel mortgages or deeds of trust, etc., upon motor vehicles covered by Chapter 70 shall not be effective to give constructive notice of such encumbrance upon such vehicle, the exclusive method being the notation on the title certificate.

■ As this Court construes Section 69(a), the expression "except such liens as may be authorized by law dependent upon possession" is an expression which refers to notice of such common law liens. That is, the true meaning of Section 69(a) is obtained by transposing the quoted exception so that the section will read as follows:

"such filing and the notation of the lien or encumbrance upon the certificate of title as provided in this Act shall constitute constructive notice of all liens and encumbrances, except such liens as may be authorized by law dependent upon possession, against the vehicle described therein to creditors of the owner, to subsequent purchasers and encumbrances."

The section would be meaningless under any other construction because notice is not given *to* liens. Notice is given *of* liens.

■ For the reasons stated, the opinion of this Court is that the notation on Fisher's title certificate was constructive notice to Perry, at the time he repaired the automobile, that the City Finance Company had a chattel mortgage on it.

But Perry's further insistence is that Chapter 70 had not become effective as to him at that time. He bases this insistence on the provisions of Section 102(b) of the statute. That section is as follows:

"This Act shall take effect from and after July 1, 1951, with respect to all Articles, Sections and Sub-

divisions relating to certificate of title and title cards, only in so far as to apply to motor vehicles purchased or transferred after that date and as to all other motor vehicles from and after March 31, 1952.''

Perry's insistence is that in as much as Fisher owned the automobile involved before July 1, 1951, it follows that under a proper construction of Section 102 (b), Chapter 70 did not become effective as to title registration until March 31, 1952. This insistence overlooks Section 103 of the statute providing:

''That the owner of a motor vehicle may apply for and receive certificate of title and title card and pay the legal fees therefor at any time after July 1, 1951.''

By reason of Section 103 Fisher had the right to receive his certificate of title at any time after July 1, 1951. Perry was charged with knowledge of that fact. As soon as Fisher did receive his certificate of title the provisions of Chapter 70 with reference to the notation of liens thereon became effective as to all persons thereafter dealing with the automobile represented by that certificate of title.

The judgment of the Circuit Court will be reversed. The suit of City Finance Company will be sustained, and it adjudged entitled to the possession of the automobile by reason of its superior lien. All costs in each Court will be adjudged against Perry.